# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Officer Tricia J. Zimmerman** | : | |
| **Columbus Division of Police** | : | |
| **120 Marconi Blvd.** | : | |
| **Columbus, Ohio 43215** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:15-CV-3115 |
| v. | : | |
| | : | Judge |
| **Cmdr. Jennifer Knight** | : | |
| **Columbus Division of Police** | : | |
| **120 Marconi Blvd.** | : | **JURY DEMAND** |
| **Columbus, Ohio 43215** | : | **ENDORSED HEREON** |
| | : | |
| and | : | |
| | : | |
| **Lt. Bela Bernhardt** | : | |
| **Columbus Division of Police** | : | |
| **120 Marconi Blvd.** | : | |
| **Columbus, Ohio 43215** | : | |
| | : | |
| and | : | |
| | : | |
| **Sgt. Jack King, Jr.** | : | |
| **Columbus Division of Police** | : | |
| **120 Marconi Blvd.** | : | |
| **Columbus, Ohio 43215** | : | |
| | : | |
| and | : | |
| | : | |
| **Sgt. David Harrington** | : | |
| **Columbus Division of Police** | : | |
| **120 Marconi Blvd.** | : | |
| **Columbus, Ohio 43215** | : | |
| | : | |
| and | : | |
| | : | |
| **Cmdr. Mark Lang** | : | |
| **Columbus Division of Police** | : | |
| **120 Marconi Blvd.** | : | |
| **Columbus, Ohio 43215** | : | |
| | : | |
| and | : | |
| | : | |

|   |   |
|---|---|
| **Lt. Roderick Wittich** | : |
| **Columbus Division of Police** | : |
| **120 Marconi Blvd.** | : |
| **Columbus, Ohio 43215** | : |
| | : |
| **and** | : |
| | : |
| **Sgt. Jeffrey Shuttleworth** | : |
| **Columbus Division of Police** | : |
| **120 Marconi Blvd.** | : |
| **Columbus, Ohio 43215** | : |
| | : |
| **and** | : |
| | : |
| **Deputy Chief Thomas Quinlan** | : |
| **Columbus Division of Police** | : |
| **120 Marconi Blvd.** | : |
| **Columbus, Ohio 43215** | : |
| | : |
| **and** | : |
| | : |
| **Chief Kimberly Jacobs** | : |
| **Columbus Division of Police** | : |
| **120 Marconi Blvd.** | : |
| **Columbus, Ohio 43215** | : |
| | : |
| **and** | : |
| | : |
| **The City of Columbus** | : |
| **c/o City Attorney** | : |
| **77 North Front St.** | : |
| **Columbus, Ohio 43215,** | : |
| | : |
| **Defendants.** | : |

# **COMPLAINT**

# **THE PARTIES**

1. Plaintiff, Tricia Zimmerman, is a citizen and resident of the State of Ohio. She lives in Franklin County, Ohio.

2. Defendants, Knight, Bernhart, King, Harrington, Lang, Wittich, Shuttleworth, Quinlan, and Jacobs are individuals who are, and at all times relevant hereto have been, employed by the City of Columbus, Division of Police.

3. Defendant, the City of Columbus ("the City") is a political subdivision organized and existing under Ohio law. At all times relevant hereto, the City employed Plaintiff and the individual defendants.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction in this matter pursuant to 28 U.S.C. §1331 (federal question jurisdiction). Plaintiff's Complaint alleges violations of her federal civil rights by the defendants acting under color of state law, in violation of 42 U.S.C. §1983.

5. Venue is proper in the Southern District of Ohio, Eastern Division, because Plaintiff resides in this Judicial District and the claims alleged herein arose within this Judicial District.

## BACKGROUND INFORMATION AND FACTS

6. Plaintiff is currently employed as an officer with the Columbus Division of Police.

7. On or about November 4, 2014, Plaintiff was spending time at her home with her children and her boyfriend ("Boyfriend").

8. At that time, Boyfriend, who is also a City of Columbus police officer, was in the process of finalizing a divorce from his wife.

9. In the early afternoon hours, Boyfriend's soon-to-be-ex-wife ("Wife") arrived at Plaintiff's house and was upset.

10. Boyfriend went outside to talk to Wife, and their conversation became angry.

11. Eventually, Wife, without permission, grabbed Boyfriend's personal cell phone.

12. Wife brought Boyfriend's cell phone to the Columbus Division of Police, and falsely reported that Plaintiff and Boyfriend engaged in sexual intercourse while on duty.

13. The Columbus Division of Police's Internal Affairs Bureau investigated the matter, including conducting a warrantless search of Boyfriend's personal cell phone.

14. Plaintiff had – legally, confidentially, and when not on duty – sent naked pictures of herself from her personal cell phone to Boyfriend's personal cell phone.

15. The officers assigned to Internal Affairs did not have a warrant to search Boyfriend's cell phone, and they were aware that any search of Boyfriend's personal cell phone would be improper and would violate the Fourth Amendment.

16. Nevertheless, Internal Affairs searched Boyfriend's cell phone, thereby discovering personal information, including discovery of the naked pictures of Plaintiff.

17. Defendant Officers with Internal Affairs printed out copies of the photos of Plaintiff, laid the pictures out on a conference room table, and showed the pictures to other officers uninvolved in the investigation.

18. When Plaintiff arrived for, and was waiting for, her interview with Internal Affairs, Sgt. King of Internal Affairs told her, "I saw your pictures. They printed them out and spread them all over the conference room table. We said we were going to send them in to magazines." – or words that that effect.

19. By, among other things, printing copies of Plaintiff's pictures illegally, sharing those photos with others, and making comments about the photos to each other and to Plaintiff, Defendants subjected Plaintiff to a hostile work environment. The individuals involved in this misconduct were Defendants Knight, King, Bernhardt and Harrington.

20. During the course of the investigation, Plaintiff complained to Defendants Lang, Whittich, Shuttleworth, Bernhardt, King, and Quinlan, as well as others within the Division of

Police and the City of Columbus, about the conduct of Internal Affairs in conducting the investigation. Among other things, Plaintiff complained (a) that Internal Affairs was investigating something that was clearly a domestic matter, unrelated to police business; (b) that Internal Affairs had accessed Boyfriend's cell phone improperly; and in violation of Boyfriend's Fourth Amendment rights; and (c) that Internal Affairs was spreading the private photos around the Division, failing to act with appropriate discretion, and causing an environment that made Plaintiff feel terribly uncomfortable.

21. Various high-ranking officers within the Division of Police, including Chief of Police Kimberly Jacobs, became aware of the fact that Internal Affairs blatantly violated the Fourth Amendment by searching Boyfriend's cell phone. The Division, including Chief Jacobs, took no action against anybody in Internal Affairs, other than to direct them to start the investigation over without use of any information obtained from the cell phone. Though she was well aware of Plaintiff's complaints, neither Chief Jacobs nor any other official within the Division of Police, or the City of Columbus took any steps to prevent Plaintiff from retaliation.

22. There are three possible results of an Internal Affairs investigation. First, the charges against an officer can be deemed "substantiated" – which is a finding that the officer committed the misconduct of which she was accused. Second, the charges can be deemed "unsubstantiated" – which means that the investigation revealed insufficient evidence to establish that the officer committed the misconduct of which she was accused. Third, the charges can be deemed "unfounded" – which means that the investigation demonstrated that the officer did not engage in the conduct of which she was accused.

23. The Internal Affairs investigation into the allegations against Plaintiff resulted in a determination that the charge was "unfounded." That determination escalated up the chain, and

the "unfounded" determination was affirmed until the matter reach the level of the Deputy Chief. Deputy Chief Quinlan changed the finding from "unfounded" to "unsubstantiated."

24. Deputy Chief Quinlan changed the finding from "unfounded" to "unsubstantiated" in order to punish Plaintiff for exercising her First Amendment rights. There was no factual, investigation-related reason to change the internal affairs finding.

25. Prior to the conclusion of the investigation, and prior to Plaintiff's complaints about that investigation, Plaintiff had been permitted to work temporary assignments with the vice unit.

26. As a young, female officer, with a skill set that lends itself well to such assignments, Plaintiff successfully worked various undercover assignments. These assignments were helpful to the Division, helpful to the public, and helpful to Plaintiff because it furthered her experience and placed her in a more beneficial position for purposes of career advancement.

27. Following the incidents described above, Defendants have punished Plaintiff.

28. Defendants have punished Plaintiff by denying her the ability to do temporary undercover assignments with the vice unit. Defendants have also punished Plaintiff by refusing permission for her to do INTAC assignments, as well as assignments with the narcotics unit and human trafficking task forces among others.

29. Defendants have also punished Plaintiff by requiring her to work excessive amounts of guard duty.

30. Guard duty is a task that officers generally do not seek, do not want, and do not enjoy. It generally consists of standing around a crime scene or other protected area and watching to make sure no unauthorized personnel enter. While it is a task that officers must perform at times, when an officer is told in advance that she has to work guard duty more than other guards do, it is unequivocally a punishment.

31.     On July 23, 2015, Lt. Wittich ordered that on "any shift in which [Plaintiff] is working, she is to work a one-officer unit and, if there is guard duty available, will work a four hour guard duty each shift day for the period of one year from this date. If the guard duties are 2-hour guards, her guard will be back to back guard shifts." The order further stated that Plaintiff "is not to be assigned to work a guard shift if it is likely overtime would be involved," and that "Sergeants may cancel an[other] officer's guard and have [Plaintiff] added."

## COUNT ONE:  FIRST AMENDMENT RETALIATION

32.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully restated herein.

33.     Plaintiff's complaints as described above, regarding improper conduct by Internal Affairs, gender-based harassment within the Division of Police, and illegal conduct that included Fourth Amendment violations, all address matters of public concern.  Her speech was constitutionally protected.

34.     Defendants, including Defendants Quinlan, Lang, Whittich, Shuttleworth and Jacobs, have taken adverse actions against Plaintiff by the actions noted above, including, but not limited to, ordering her to work a four-hour guard duty shift every day that one is available for a year and denying her the ability to do temporary assignments.

35.     Defendants Lang and Whittich specifically began to deny Plaintiff temporary assignments for which Plaintiff was qualified and had been awarded prior to her voicing her concerns described above and exercising her First Amendment rights.

36.     Defendant Shuttleworth specifically changed the finding of Plaintiff's administrative investigation based on Plaintiff's speaking out about matters of public concern within the Division of Police and the actions of Defendant Shuttleworth were known to and supported by Defendants Jacobs, Quinlan, Lang and Whittich.

37. Such actions were motivated by Plaintiff's exercise of her constitutional rights. Indeed, Defendants have offered no legitimate justification whatsoever for these actions against Plaintiff that would indicate any motivation other than an unlawfully retaliatory one.

38. The retaliatory actions taken by Defendants were severe enough to deter a person of ordinary firmness from exercising her constitutional rights.

39. Defendants deprived Plaintiff of these rights while acting under color of law.

40. Defendants' misconduct violates 42 U.S.C. § 1983.

41. The actions of Defendants were malicious, willful, and wanton, were motivated by evil motive and intent, and involved reckless and callous indifference to Plaintiff's federally protected rights.

42. As a direct and proximate result of these unlawful actions, Plaintiff has suffered emotional, reputational, and economic harm.

43. The violation of Plaintiff's constitutional and civil rights as described herein was the direct result of the City's custom, practice and/or policy in that Columbus Division of Police supervisors and administrators were aware of, and indeed involved in, the implementation of the unconstitutional customs, policies, and practices.

44. In addition, the City of Columbus is liable for the actions of the individual defendants that have deprived Plaintiff of her constitutional rights because the officers that have imposed the unconstitutional discipline on Plaintiff are inadequately trained and have been led by the City to believe they can, with impunity, subject individual officers to such discipline without repercussion.

**COUNT TWO:  DUE PROCESS VIOLATIONS**

45. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully restated herein.

46. As a member of the classified civil service, Plaintiff has a constitutionally protected property interest in her continued employment, compensation, and job benefits.

47. The restriction on Plaintiff preventing her from taking any temporary assignments and the imposition of mandatory guard duty for a year constitute significant demotions.

48. The conduct of Defendants, including Jacobs, Quinlan, Lang, Whittich, Knight, Shuttleworth and Harrington, has violated Plaintiff's due process rights in various ways, including, but not limited to:

    a. Imposing serious discipline that functions as a deprivation of Plaintiff's constitutionally protected property rights without providing Plaintiff with pre-deprivation due process, including notice, an explanation of the evidence against Plaintiff, and a meaningful opportunity to be heard.

    b. Imposing serious discipline that functions as a deprivation of Plaintiff's constitutionally protected property rights without providing Plaintiff with pre-deprivation due process, by virtue of imposing discipline for concocted reasons rather than the actual motivation for the discipline, which has the effect of denying Plaintiff of her right to notice, an explanation of the evidence, and an opportunity to be heard.

    c. Imposing serious discipline that functions as a deprivation of Plaintiff's constitutionally protected property rights without providing Plaintiff with the required post-deprivation due process rights, including a right to an appeal of the disciplinary decision.

49. The deprivation of Plaintiff's property rights without due process deprived her of rights secured by the Constitution and laws of the United States.

50. Defendant Bernhardt oversaw aspects of the investigation and approved of the violation of the due process rights of Plaintiff and stated to Plaintiff and the Fraternal Order of Police that "we are Internal Affairs and we will do what we want".

51. Defendant Knight oversaw the investigation and approved of the violation of Boyfriend's Fourth Amendment rights and the use of that information in Plaintiff's investigation.

52. Defendants Lang and Whittich began to deny Plaintiff employment related assignments afforded to other police officers within the Columbus Division of Police in violation of her due process rights and as retaliation for her First-Amendment-protected conduct.

53. Defendants Jacobs and Quinlan knew of the conduct of Defendants Lang, Whittich, Harrington, Knight and Bernhardt and approved of the behavior and allowed the conduct to continue in direct violation of Plaintiff's rights.

54. Defendants deprived her of these rights while acting under color of law.

55. The deprivations of Plaintiff's due process rights violate 42 U.S.C. § 1983.

56. The actions of Defendants were malicious, willful, and wanton, were motivated by evil motive and intent, and involved reckless and callous indifference to Plaintiff's federally protected rights.

57. As a direct and proximate result of these unlawful actions, Plaintiff has suffered emotional, reputational, and economic harm.

58. The violation of Plaintiff's constitutional and civil rights as described herein was the direct result of the City's custom, practice and/or policy in that Columbus Division of Police supervisors and administrators were aware of, and indeed involved in, the implementation of the unconstitutional customs, policies, and practices.

59. In addition, the City of Columbus is liable for the actions of the individual defendants that have deprived Plaintiff of her constitutional rights because the officers that have imposed the unconstitutional discipline on Plaintiff are inadequately trained and have been led by the City to believe they can, with impunity, subject individual officers to such discipline without the due process required by the constitution.

## COUNT THREE:  GENDER DISCRIMINATION

60. Plaintiff repeats and realleges the allegations set forth above as if fully restated herein.

61. The conduct of Defendants including Harrington, Shuttleworth, Whittich, Lang, King, Bernhardt, Knight, Quinlan and Jacobs in viewing, printing, publicizing, and commenting on the photographs of Plaintiff, as well as approving of the behavior associated with these actions and failing to take any action created a sexually hostile work environment based on Plaintiff's gender.

62. Defendants Jacobs, Quinlan and Knight approved of the illegal search of Boyfriend's phone and the use of images found on the phone in Plaintiff's administrative investigation.

63. Defendants Knight and Bernhardt allowed the investigators in the administrative investigations unit to access naked pictures of Plaintiff and to share them throughout the administrative investigations unit as well as throughout the Division of Police and took no action to stop this from occurring or disciplining those responsible.

64. Defendant King stated among other comments (i) that the illegally obtained naked photographs of Plaintiff where printed off and spread on tables within the administrative investigations unit for everyone to see; (ii) that he had viewed the naked photographs of Plaintiff; (iii) that Plaintiff's boyfriend had "upgraded" to Plaintiff; (iv) that the photographs should be sent to a magazine; and (v) that he had to put his glasses on to get a better look.

65. Defendant Harrington initiated and conducted the investigation that led to the illegal search that obtained the naked photographs and allowed the photos to be viewed.

66. Defendants Lang and Whittich used the illegally obtained information knowing it to be illegally obtained to take illegal employment action against the Plaintiff.

67. Plaintiff brings this claim pursuant to Ohio Revised Code 4112 and 42 U.S.C. § 1983.

68. On or around the time of the filing of this Complaint, Plaintiff intends to also file a charge of discrimination with the EEOC based on this sexually harassing conduct.  Plaintiff intends to amend her complaint here to include Title VII as a basis for the gender discrimination claim after she receives a Right to Sue Letter from the EEOC.

69. The actions of Defendants were malicious, willful, and wanton, were motivated by evil motive and intent, and involved reckless and callous indifference to Plaintiff's federally protected rights.

70. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered humiliation and emotional distress.  Plaintiff seeks an award of compensatory and punitive damages and the legal fees she incurs in this action.

**WHEREFORE**, Plaintiff under all counts of the Complaint requests the Entry of Judgment for the following relief:

    A.    Award Plaintiff compensatory and punitive damages in an amount to be determined at trial;

    B.    Award Plaintiff her attorneys fees and costs to prosecute this action; and

    C.    Award such other and further relief as may be just and proper.

Respectfully submitted,

/s/ John C. Camillus
John C. Camillus, Trial Attorney  (0077435)
Law Offices of John C. Camillus, LLC
P.O. Box 141410
Columbus, Ohio  43214
(614) 558-7254
(614) 559-6731 (Facsimile)
jcamillus@camilluslaw.com

/s/ Zachary Swisher
Zachary Swisher (0089084)
Peterson Conners Fergus and Peer LLP.
Two Miranova Place Suite 330
Columbus, Ohio  43215
(614) 365-7000
(614) 220-0197 (Facsimile)
zswisher@petersonconners.com

Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable under law.

/s/ John Camillus
John Camillus