UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRICIA ZIMMERMAN, | | |
| Plaintiff, | : | Case No. 2:15-cv-3115 |
| -vs- | | Judge Sarah D. Morrison<br>Magistrate Judge Elizabeth Preston Deavers |
| JENNIFER KNIGHT, *et al.*, | | |
| | : | |
| Defendants. | | |
| | | |
| JEFFREY LAZAR, | | |
| Plaintiff, | : | Case No. 2:16-cv-195 |
| -vs- | | Judge Sarah D. Morrison<br>Magistrate Judge Elizabeth Preston Deavers |
| JENNIFER KNIGHT, *et al.*, | | |
| | : | |
| Defendants. | | |

## OPINION AND ORDER

This matter is before the Court upon Defendant David Barrowman's Motion for Summary Judgment (ECF No. 61), Plaintiff Jeffrey Lazar's Brief in Opposition to Defendant's Motion for Summary Judgment (ECF No. 67), and Defendant's Reply Memorandum in Support of his Motion for Summary Judgment (ECF No. 71). For the reasons that follow, the Court **GRANTS** Defendant's Motion.

### I. PROCEDURAL HISTORY

On December 28, 2015, Officer Tricia Zimmerman filed a lawsuit (2:15-cv-3115) against

several members of the Columbus Division of Police and the City of Columbus alleging First Amendment retaliation, Due Process violations, gender discrimination, and Title VII violations.[1] On March 2, 2016, Officer Jeffrey Lazar filed a separate lawsuit (2:16-cv-195) against similar Defendants, which arose from the same facts as Officer Zimmerman's lawsuit. Officer Lazar alleged that Defendants engaged in First Amendment retaliation against him and violated his Fourth Amendment rights. The Court consolidated the lawsuits on May 10, 2016. (ECF No. 5).[2]

Thereafter, several cross-motions for summary judgment were filed by the parties. On March 29, 2019, the Honorable Michael H. Watson issued an Opinion and Order ruling on the motions (ECF No. 55), after which the only surviving claims are Officer Zimmerman's hostile work environment claim against the City of Columbus and Officer Lazar's Fourth Amendment claim against Sergeant David Barrowman. Pertinently, in addressing the cross-motions for summary judgment as to Officer Lazar's Fourth Amendment claim, the Court concluded:

> In sum, Sergeant Barrowman's search was not a proper [*O'Connor v. Ortega*, 480 U.S. 709 (1987)] search because, in the Sixth Circuit, the workplace search exception does not apply to searches of purely personal, non-workplace, items. However, it was not clearly established in November 2014 that *O'Connor* searches are constrained to workplace items. Thus, Sergeant Barrowman is entitled to qualified immunity if his search comported with the *O'Connor* standard. The Court cannot determine based on the current briefing whether the search satisfied *O'Connor's* "reasonableness in scope" requirement or, if not, whether it was clearly established that his search was unreasonable in scope. Moreover, the Court cannot determine whether the search satisfied the clearly established law regarding private searches or consent to search. As such the Court cannot rule on the motions for summary judgment regarding Lazar's Fourth Amendment claim, and the Court **DENIES** both motions at this time. The Court intends to set this case for mediation and, if mediation is unsuccessful, will order full re-briefing of the Fourth Amendment issue.

---

[1] Officer Zimmerman filed an Amended Complaint on August 10, 2017. (15-cv-3115: ECF No. 25).

[2] All record citations refer to documents filed in Case No. 2:16-cv-195 unless otherwise noted.

(Opinion, 42–43, ECF No. 55). The cases were subsequently transferred to the undersigned. (ECF No. 56).

On August 8, 2019, the parties unsuccessfully attempted mediation. As such, this Court granted the parties leave to file renewed motions for summary judgment on the Fourth Amendment issue left open by the Court in its March 29 Opinion. On August 30, Sergeant Barrowman filed his Motion for Summary Judgment (ECF No. 61). Officer Lazar filed his Memorandum in Opposition on September 27 (ECF No. 67). Sergeant Barrowman filed his Reply on October 11 (ECF No. 71). Defendant's renewed Motion is now ripe for review.

## II. RELEVANT FACTS

On November 5, 2014, Emily Lazar, then-wife of Columbus Division of Police ("CPD") Officer Jeffrey Lazar ("Plaintiff"), filed a citizen complaint with CPD's Internal Affairs Bureau ("IAB"). (Interview Transcript, 1, ECF No. 61-1). IAB is the CPD unit charged with investigating complaints involving Division personnel. (Barrowman Aff., ¶ 3, ECF No. 61-1). "A complaint is an allegation of misconduct that, if true, may be a violation of law, Division Rule of Conduct, or Division policy." (*Id.*). Ms. Lazar relayed to IAB that she believed Plaintiff and CPD Officer Tricia Zimmerman were involved in a sexual affair while on the job. (Interview Tr., 1). There is no dispute that if an officer engages in sexual activity while on duty, he is in violation of CPD's Rules of Conduct. (Lazar Depo. Vol II, 9, ECF No. 25-14). After speaking briefly with another officer on the phone, Ms. Lazar met with CPD Sergeant David Barrowman ("Defendant") for an administrative interview. (Interview Tr., 1). At that time, Defendant was an IAB investigator, a position he held for approximately ten years. (Barrowman Aff., ¶ 2, ECF No. 61-1).

During the interview, Defendant learned that on November 4, 2014, Ms. Lazar drove to

Officer Zimmerman's house. (Interview Tr., 2–3). After no one answered the door, she walked over to Plaintiff's car, which was parked outside. (Interview Tr., 3). Five to ten minutes later, Plaintiff came out of Officer Zimmerman's house and Plaintiff and Ms. Lazar got into his car to talk. (*Id*; Lazar Decl., ¶ 8, ECF No. 67-1). Once in the car, Ms. Lazar located a cell phone on Plaintiff's person that was different from the cell phone he used to call and text Ms. Lazar. (Interview Tr., 2–4; Lazar Depo. Vol I, 33–35, ECF No. 25-13). Ms. Lazar proceeded to take the cell phone without Plaintiff's permission. (Lazar Decl., ¶ 8). Although Plaintiff requested multiple times to have the phone returned, Ms. Lazar refused. (Interview Tr., 5; Lazar Decl., ¶ 8). While Ms. Lazar had become aware of the existence of this second cell phone in mid to late August 2014, Plaintiff previously told Ms. Lazar the phone belonged to someone else. (Interview Tr., 2).

Ms. Lazar brought Plaintiff's second personal cell phone with her to CPD on November 5. (*Id.* at 5). Using a password to open it, Ms. Lazar showed Defendant and CPD Sergeant Dean Worthington, who was also present for the interview, the contents of the phone, pointing out text messages and photographs that she believed supported her allegations. (Barrowman Aff., ¶ 4, ECF No. 61-1). Ms. Lazar indicated that she read through "[a] good bit of the messages from [Plaintiff] to [Officer Zimmerman]" including five to ten text messages between the officers that led her to believe that the two were having sex while on duty. (Interview Tr., 4). According to Ms. Lazar, there was "more than that" but that "[t]here's 5-10 that actually stood out . . . definitely" spanning July 2014 to November 5, 2014. (*Id.*). Specifically, Ms. Lazar pointed to the times the messages occurred and comments like, "do you want to meet at the normal spot?" after one or both indicated they were "just clearing up on a [police] run" as evidence that Plaintiff and Officer Zimmerman were engaging in sexual acts on duty. (*Id.* at 6).

At the conclusion of the interview, Defendant had an IT officer download "all the contents of the cell phone . . . Mrs. Lazar had referred to and shown [him], all the text messages and photos, not the entire contents of the cell phone[.]" (Barrowman Aff., ¶ 2, ECF No. 61-2). Similarly, in his deposition, Defendant stated: "[Mrs. Lazar] provided me . . . information that I thought was useful in our investigation. So that information, I had a copy made." (Barrowman Depo., 34, ECF No. 25-9). Based on the investigative file provided to Plaintiff, CPD downloaded approximately 2,731 pages of text messages, photographs, web browser history, and call history spanning June 2014 to November 2014 from Plaintiff's cell phone. (Mobile Phone Examiner Plus Report, ECF Nos. 68-1–5; Lazar Decl., ¶ 6). The phone was returned to Ms. Lazar before she left the station. (Barrowman Depo., 32).

Although not captured in the audio recording or transcript of the interview, Defendant testified during his deposition that Ms. Lazar expressed that it was her understanding that the phone was communal property and that she was not required to return the phone to Plaintiff. (Barrowman Depo., 28–29). Defendant also claimed that Ms. Lazar told him she paid for the cell phone, but according to Plaintiff, "it was [his] personal cell phone" and he "paid for the cell phone personally." (*Id.* at 50; Lazar Decl., ¶ 7). Plaintiff stated during his deposition that he first purchased the phone for "work purposes" to communicate with confidential sources and then started using it to communicate covertly with Officer Zimmerman without his wife finding out. (Lazar Depo. Vol I, 31–32). According to Plaintiff, his relationship with Officer Zimmerman began sometime in February 2014. (*Id.* at 48).

### III. ANALYSIS

Defendant filed a renewed Motion for Summary Judgment on the grounds that his search of Plaintiff's cell phone was permitted pursuant to three exceptions to the Fourth Amendment's

protection against warrantless searches. Defendant also argues that even if the search did violate the Fourth Amendment, he is nevertheless entitled to qualified immunity.

### A. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Because Defendant has raised qualified immunity as a bar to the Fourth Amendment claim brought against him in his personal capacity, Plaintiff bears the burden of proving that Defendant is not entitled to summary judgment. *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008). An official is entitled to the defense of qualified immunity so long as he has not violated a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). This is a purposefully high bar for a plaintiff. Qualified immunity is intended to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Accordingly, "it protects 'all but

the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The qualified immunity analysis involves a two-step determination. At the summary judgment stage, a defendant is entitled to qualified immunity if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant violated a plaintiff's constitutional right or said right was not clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232; *Behrens v. Pelletier*, 516 U.S. 299, 306–07 (1996). It is in the discretion of the Court to decide the order of these two steps, based on the particular circumstances of the case. *Pearson*, 555 U.S. at 236.

### B. Workplace Search Exception

Plaintiff argues that Defendant violated his rights under the Fourth Amendment by searching his personal cell phone without a warrant in the course of CPD's IAB investigation. The Fourth Amendment reads, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. Amend. IV. "It is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations[]" and applies "as well when the Government acts in its capacity as an employer." *City of Ontario, Cal. v. Quon,* 560 U.S. 746, 755–56 (2010) (citations omitted).

In its March 29 Opinion, the Court examined the "workplace search" exception, announced in *O'Connor v. Ortega*, 480 U.S. 709 (1987), and applied it to the facts of this case.

> [T]he Supreme Court held that "special needs, beyond the normal need for law enforcement make the . . . probable cause [and warrant] requirement impracticable[] for . . . .investigations of work-related misconduct." *Id.* at 725 (internal quotation marks and citation omitted). The plurality held that "public

7

employer intrusion on the constitutionally protected privacy interests of government employees for . . . investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." *Id.* at 725–26. To satisfy this "reasonable under all the circumstances" test, "both the inception and the scope of the intrusion must be reasonable." *Id.* at 726.

\* \* \*

In "delineat[ing] the boundaries of the workplace context" as part of the threshold analysis, the plurality defined the workplace as including "those areas and items that are related to work and are generally within the employer's control." *Id.* at 715. It recognized, however, that "not everything that passes through the confines of the business address can be considered part of the workplace context . . . ." *Id* at 716. The plurality noted that an employee bringing in closed luggage prior to a vacation or a briefcase or purse to work each day may not have a reasonable expectation of privacy in the outward, public appearance of the object, but "the employee's expectation of privacy in the contents . . . is not affected in the same way." *Id.* The plurality recognized, therefore, that "[t]he appropriate standard for a workplace search does not necessarily apply to a piece of closed personal luggage, a handbag or a briefcase that happens to be within the employer's business address." *Id.* In other words, *O'Connor* developed a standard for acceptable warrantless searches of a public employee's workspace even when the public employee has a reasonable expectation of privacy in that workspace, but it recognized that the "workplace search" standard it announced would not necessarily apply to every search of a public employee's property that is conducted within the physical bounds of the workplace.

Several decades after *O'Connor* was decided, the Sixth Circuit differentiated between searches of public workspace/workplace items and searches of personal items located in a workspace in *James v. Hampton*, 592 F. App'x 449 (6th Cir. 2015). In *James*, a state court judge challenged the search of her office and the personal safe she kept therein. The Sixth Circuit concluded that the judge had a reasonable expectation of privacy in both her office and the personal safe kept therein. *Id.* at 456.

When analyzing whether the search of the office or safe was in the workplace context such that the searches were subject to the "workplace search" standard established in *O'Connor*, the court noted that "[a]lthough an office is clearly within the bounds of the workplace context delineated in *O'Connor*, no case in our circuit has presented the issue of a warrantless search of a locked personal item that a public employee had not been previously notified would be subject to search." *Id.*

The court concluded that the personal safe, although within the physical bounds of the "employer's business address," *id.* at 457 (quoting *O'Connor*, 480 U.S. at 716), was more analogous to the closed luggage or briefcase alluded to in *O'Connor* than workplace space because it "was not within the employer's control." *Id.* Accordingly, the court concluded that "*O'Connor* counsels that the

> warrantless search of the safe f[ell] outside the bounds of the special needs exception to the warrant requirement altogether." *Id.* Instead, "[b]ecause the safe [was] not a workplace item, it [was] subject to the general rule under the Fourth Amendment," and because the complaint alleged that the safe was searched without a warrant, probable cause, or exception, the judge had stated a Fourth Amendment claim. *Id.*
>
> *James* is controlling with respect to *O'Connor's* application in this circuit. Therefore, in the Sixth Circuit, a government search of Lazar's personal cellphone (notwithstanding that the phone is within the physical boundaries of the government employer's workplace) would not typically be a search within the workplace context, and the standard established in *O'Connor* would not apply to such a search. Accordingly, the search would violate the Fourth Amendment unless another exception applied.
>
> *James* was not decided until 2015, however. Thus, it was not until 2015 that the Sixth Circuit clarified that the *O'Connor* workplace search standard applied only to searches of workplace items.
>
> The search of Lazar's phone occurred in November of 2014. Barrowman Aff. 11, ECF No. 37-1; Barrowman Dep. 13–14, ECF No. 37-9. At that time, there was no opinion from the Supreme Court, Sixth Circuit, or this court, nor was there a consensus among other circuits, clearly establishing that the *O'Connor* workplace search standard did not apply to personal items in the workplace searched pursuant to an investigation into employee wrongdoing. At the time of the search, therefore, Defendant was not on notice that his actions in performing a workplace search on Lazar's personal cellphone violated clearly established law. Accordingly, if the search otherwise conformed to the standard set forth in *O'Connor*, Defendant is entitled to qualified immunity.

(Opinion, 33–37, ECF No. 55).

Following this analysis, the Court began to apply the *O'Connor* "reasonable under all the circumstances" test and concluded that the search was reasonable at its inception. (*Id.* at 37–39). However, after reviewing the briefing and evidence submitted at that time, the Court could not determine whether the scope of the intrusion was reasonable. After further briefing by the parties, the Court will now analyze whether the search, under *O'Connor*, was reasonable in scope and, if it was not, whether it was clearly established law at that time that the search was unreasonable in scope.

    **1.    Scope of Search**

A "search will be permissible in its scope when the measures adopted are reasonably

related to the objectives of the search and not excessively intrusive in light of . . . the nature of the [misconduct]." *O'Connor*, 480 U.S. at 726 (internal quotations omitted). "In many cases, public employees are entrusted with tremendous responsibility, and the consequences of their misconduct or incompetence to both the agency and the public interest can be severe." *Id.* at 724. As such, "[r]easonableness depends upon the circumstances presented in a given situation and upon balancing the public, governmental, and private interests at stake in that situation." *Shields v. Burge*, 874 F.2d 1201, 1204 (7th Cir. 1989) (citing *O'Connor*, 480 U.S. at 722–23). The Supreme Court has "repeatedly refused to declare that only the least intrusive search practicable can be reasonable under the Fourth Amendment . . . because judges engaged in *post hoc* evaluations of government conduct can almost always imagine some alternative means by which the objectives of the government might have been accomplished[.]" *Quon*, 560 U.S. at 763 (internal quotations and citations omitted).

According to Defendant, he directed an IT officer to download all that "Mrs. Lazar had referred to and shown [him], all the text messages and photos, not the entire contents of the cell phone[.]" (Barrowman Aff., ¶ 2, ECF No. 61-2). Plaintiff argues that "Defendant has to pretend that his search was limited in that way because, were it broader, it would be a search whose scope was unreasonable . . . ." (Memo. Opp., 9, ECF No. 67). Rather, according to Plaintiff, "the search downloaded the entire contents of the phone." (*Id.* at 2).

There is no dispute that the search at issue resulted in a download of 2,731 pages of text messages, photographs, web browser history, and call history from Plaintiff's cell phone. (Examiner Report, ECF Nos. 68-1–5; Lazar Decl., ¶ 6). The only factual issue before the Court is whether that download included all or only some of the contents of Plaintiff's cell phone. And while the evidence seems to suggest that the search did not include a download of the entire

contents of the phone, the Court must construe the evidence in the light most favorable to Plaintiff as the non-moving party.

To be sure, there was a great deal of information that was downloaded from Plaintiff's cell phone. Defendant focuses on the fact that approximately 1,982 pages of what was downloaded from Plaintiff's phone were text message conversations or screenshots of text message conversations between Plaintiff and Officer Zimmerman that included the same potentially implicating content that Ms. Lazar pointed out to Defendant. Additionally, there were approximately 58 pages of photographs of Officer Zimmerman or photographs sent between Officer Zimmerman and Plaintiff that are arguably relevant to the misconduct inquiry.

Plaintiff emphasizes that the download also included approximately 13 pages of web browser history, 10 pages of call history, 16 pages of text message conversations with two numbers not identified as Officer Zimmerman, and 533 pages of personal, family, and nondescript photographs. While it is unclear to the Court whether any of these materials were sent between Officer Zimmerman and Plaintiff, this information seems to be unrelated to the IAB investigation.

Neither party has submitted evidence that compares what was available to download on the phone and what was actually downloaded. Rather, the Court has only Defendant's statement in his affidavit[3] that he did not download all the contents of the phone, and Plaintiff's argument that Defendant did. However, it does appear that the entire contents of the phone were not downloaded. For example, Plaintiff states that he initially purchased the phone to communicate

---

[3] The Court is mindful that there may be a discrepancy between Defendant's deposition testimony and his second-filed affidavit about what was downloaded from the cell phone. (*Compare* Barrowman Depo., 35, *with* Barrowman Aff., ¶ 2, ECF No. 61-2). If this issue were to have affected the Court's ultimate decision, that discrepancy would have been resolved in favor of Plaintiff. It did not.

with confidential sources.[4] However, no such conversations appeared in the download. Similarly, according to Plaintiff, his relationship with Officer Zimmerman started in February 2014; Plaintiff testified that since that time, the two talked "quite often" by text message. (Lazar Depo. Vol I, 48). From what the Court can discern from its review of the download (ECF Nos. 68-1–5), the information downloaded spans roughly June 11, 2014 through November 4, 2014, closely matching the timeframe of the allegations raised by Ms. Lazar.

Nevertheless, whether the download was all of the contents of the cell phone or not does not necessarily decide the analysis of whether the search was reasonable in scope. *See Quon*, 560 U.S. at 761–62 (inferring that even though the defendant only requested transcripts of the plaintiff's text messages from his work pager for two months, it would have been reasonable to review transcripts for all months in which the plaintiff exceeded his character allowance to see if the messages were personal in nature). Defendant was not required to limit his search to only those text messages and photographs shown to him by Ms. Lazar. He was permitted to investigate the allegations in a manner that was reasonable in scope in relation to the misconduct, which in this case was serious. Ms. Lazar alleged that Plaintiff was having a sexual affair with another police officer and at least some of it was occurring while one or both of the officers were on duty. A police officer engaging in sexual activity on the job undermines public safety and the community's trust in its public servants. *See Shields*, 874 F.2d at 1204 ("The public and government have strong interests in ferreting out misconduct by police officers."). Ms. Lazar reached that conclusion after looking through text messages and pictures on Defendant's second

---

[4] It is disingenuous for Plaintiff to describe his second cell phone as purely personal throughout his Memorandum in Opposition when Plaintiff admittedly purchased it for and used it to communicate with confidential sources in furtherance of his duties as a CPD officer. (Lazar Depo. Vol I, 31; Egelhoff Depo., 16, ECF No. 25-8).

personal cell phone. Defendant then searched that same phone for evidence of misconduct during the timeframe alleged. *See Gossmeyer v. McDonald,* 128 F.3d 481, 491 (7th Cir. 1997) (finding the search reasonable in scope where it was limited to those places where evidence of the alleged misconduct was likely be found and did not extend to places where evidence would not reasonably have been found). Ancillary exposure to Plaintiff's personal information does not automatically elevate a search to one that was excessively intrusive. *See Quon*, 560 U.S. at 763 (explaining that because a search reveals details of an employee's personal life does not make it *per se* unreasonable).

Ultimately, however, it is unnecessary to determine definitively whether the scope of the search was "excessively intrusive in light of . . . the nature of the [misconduct]" in violation of Plaintiff's constitutional rights because the applicable case law at the time of the alleged violation did not clearly establish the right allegedly violated. *O'Connor*, 480 U.S. at 726 (internal quotations omitted). Plaintiff's Fourth Amendment claim is resolved on the basis of the second prong of the qualified immunity inquiry.

### 2. Clearly Established Law

Plaintiff has failed to establish that the law was sufficiently clear at the requisite time that the scope of the search was unreasonable. Defendant is entitled to qualified immunity.

In order for a right to be "clearly established" the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This requires a high degree of specificity. *Id.* That is, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* For purposes of this Court, "[a] right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, or the district court itself, or case law from other circuits which

is directly on point." *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999) (internal quotations and citations omitted).

As previously discussed, in the 1987 *O'Connor v. Ortega* decision, the Supreme Court decided that investigations of work-related misconduct should be judged by the standard of reasonableness under all the circumstances. 480 U.S. at 725–26. *O'Connor* concerned physical files and said nothing about electronic devices. Over two decades later, in 2010, the Eleventh Circuit posited that "[t]he Supreme Court's more-recent precedent shows a marked lack of clarity in what privacy expectations as to content of electronic communications are reasonable." *Rehberg v. Paulk*, 611 F.3d 828, 844 (11th Cir. 2010) (discussing *Quon*, 560 U.S. 746). Instead, the Supreme Court cautioned that "[t]he judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear." *Quon*, 560 U.S. at 759.

By November 2014, the time of the search in this case, there was still no precedent that set limitations on a reasonable cell phone search within the *O'Connor* context. Notwithstanding the Supreme Court's *Riley v. California,* 573 U.S. 373 (2014) decision, which, as the Court previously explained applies to criminal searches incident to arrest (Opinion, 32–33), the case law has not progressed. To illustrate, in *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608 (S.D. Ohio 2016), the plaintiff's wife extracted digital information from one of plaintiff's old cell phones, which included text messages, pictures, and other deleted information, and sent it to the NAACP. 614–15. Upon learning of the derogatory and racist nature of the extracted information from the NAACP, the plaintiff's employer, a county sheriff's office, initiated an administrative investigation into the plaintiff. *Id.* at 615. As part of that investigation, the plaintiff's wife provided the same phone to the sheriff's office, which extracted digital information from the

14

phone. *Id.* at 616. On March 25, 2016, this Court found in that case that, even if the plaintiff had alleged facts to support that the scope of the search was unreasonable, there was no clearly established law governing the parameters of the warrant exception for investigations of employee misconduct in electronic devices. *Id.* at 624–25. To say that such guidance was nevertheless available in this case in 2014 defies logic. Plaintiff has not identified any case law to the contrary.

Because Plaintiff has failed to establish that the scope of the search violated a clear constitutional right, the Court **GRANTS** Defendant's Motion for Summary Judgment. In light of this conclusion, the Court does not address the parties' arguments regarding the consent or private search exceptions to the Fourth Amendment's warrant requirement.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 61). The Clerk is **DIRECTED** to **ENTER JUDGMENT** accordingly and terminate 2:16-cv-195 **ONLY** from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

    /s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE